**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| MYRON RODERICK NUNN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:10CV164 |
| | ) | |
| ALVIN W. KELLER, JR., | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On January 19, 2001, in the Superior Court of Durham County, Petitioner pled guilty to maintaining a dwelling for keeping controlled substances, possession of a Schedule II substance, misdemeanor larceny, and misdemeanor possession of stolen goods, all while being a habitual felon, in cases 99 CRS 65782, 99 CRS 57782-83, and 00 CRS 1013. (Docket Entry 6, Ex. 1.) Pursuant to his plea bargain, he received two consecutive 120-day prison sentences, one 12- to 15-month prison sentence, and one 188- to 235-month prison sentence. The 12- to 15-month and 188- to 235-month prison sentences were suspended while Petitioner completed 60 months of supervised probation. (Id. Exs. 1-3.) Petitioner violated his probation and the prior, suspended prison sentences were activated on September 18, 2001. (Id. Ex. 4.) In addition, on March 24, 2003, in Durham County, Petitioner pled guilty to felony larceny while a habitual felon in cases 02 CRS 8969 and 02 CRS 45464. (Id. Ex. 5.) He received a 168- to 211-month prison

sentence to run concurrently with the prior 188- to 235-month prison sentence. (Id. Ex. 6.)

Petitioner filed no direct appeals in any of his cases, but did later seek collateral review. On September 25, 2006, through counsel, Petitioner filed a motion for appropriate relief. (Id. Ex. 7.) Following a summary denial, counsel filed a certiorari petition with the North Carolina Court of Appeals, which that court denied on April 19, 2007. (Id. Exs. 9, 11.) On November 27, 2007, Petitioner filed a pro se motion for appropriate relief which was summarily denied on June 23, 2008. (Id. Ex. 12.) Finally, on November 4, 2009, he filed what the state courts construed as a third motion for appropriate relief. (Id. Ex. 13.) Upon the denial of that motion, Petitioner sought a writ of certiorari from the North Carolina Court of Appeals, which denied his request on January 28, 2010. (Id. Ex. 17.) Petitioner then filed his instant Petition in this Court; it reflects placement in the mail on February 19, 2010, but the Court received it on March 1, 2010. (Docket Entry 2 at 15.)

### Petitioner's Claims

Petitioner raises four claims for relief in his Petition. First, he argues that he was sentenced in an aggravated sentencing range without a jury. (Id. ¶ 12, Ground One.) Second, he claims that he was subjected to double jeopardy as to one of his convictions. (Id. ¶ 12, Ground Two.) Next, he claims that he received ineffective assistance of counsel because his attorney allowed him to enter an illegal guilty plea. (Id. ¶ 12, Ground

-2-

Three.)  Finally, he claims that his lengthy sentences constitute cruel and unusual punishment because they are excessive given the minor crimes he committed.  (_Id._ ¶ 12, Ground Four.)

## **Pending Motions**

Respondent has moved to dismiss the Petition on statute of limitations grounds.  (Docket Entry 5.)  Petitioner has filed multiple responses in opposition (Docket Entries 8, 12, 13) and Respondent has replied (Docket Entry 14).  In addition, Petitioner has moved for discovery and appointment of counsel (Docket Entry 9), for default judgment (Docket Entry 16), for production of documents (Docket Entry 18), for an order compelling discovery (Docket Entry 20), for default judgment again (Docket Entry 21), for an order transferring him to a different prison facility (Docket Entry 25), for issuance of a writ of habeas corpus (Docket Entry 27), for an order transferring him to a federal prison (Docket Entry 28), for further discovery (Docket Entry 29), for withdrawal of a separate civil complaint regarding the conditions of his confinement (Docket Entry 30), for a temporary restraining order (Docket Entry 32), for amendment of a separate civil complaint about the conditions of his confinement (Docket Entry 35), for withdrawal of consent to referral to a United States Magistrate Judge (Docket Entry 36), and for a transfer to a different prison (Docket Entry 37).

## **Discussion**

All but one of Petitioner's motions would become moot, if Respondent should prevail on its statute of limitations argument.

However, before proceeding to make a recommendation on Respondent's motion to dismiss, the undersigned United States Magistrate Judge will address Petitioner's motion seeking to withdraw his consent for exercise of jurisdiction by a Magistrate Judge (Docket Entry 36). Said motion arises from an erroneous premise; specifically, this case has not been referred to the undersigned Magistrate Judge for all purposes, including disposition. Instead, the undersigned Magistrate Judge will only make a recommendation as to dispositive matters under 28 U.S.C. § 636(b)(1)(B), which requires no consent from the parties. Accordingly, the Court will deny Petitioner's motion seeking to rescind consent as moot because the Court has not treated this case as one involving consent to the jurisdiction of a Magistrate Judge.

Respondent requests dismissal on the ground that the Petition was filed[1] beyond the one-year limitation period imposed by 28 U.S.C. § 2244(d)(1). In order to assess this argument, the Court

---

[1] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 Fed. Appx. 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 Fed. Appx. 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court declines to consider this matter further.

first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) <u>the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review</u>;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

<u>Green v. Johnson</u>, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case. As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction(s) ended.

Here, Petitioner's second judgement of conviction, the one that resulted in the 168- to 211-month term of imprisonment, was entered on March 24, 2003. His other sentences had been activated about a year and a half earlier. Petitioner did not file any direct appeals and his time for doing so expired fourteen days after entry of judgment. N.C.R. App. P. 4(a). Calculating the commencement of the limitations period from the date of the later judgment,[2] Petitioner's time to file in this Court began to run on April 7, 2003. It expired a year later in April of 2004 without Petitioner having filed a federal habeas petition. In fact, he did not file any such petition for nearly six more years.

The one-year limitation period is tolled for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Unfortunately for Petitioner, his time to file in this Court expired well before he made any state court filings and filings made after the limitations period has ended do not revive or restart it. Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000). Therefore, the Petition is untimely under § 2244(d)(1)(A).

---

[2] Petitioner's claims appear to vary as to whether they pertain to the first conviction, the second, or both. For simplicity's sake, and because it makes no difference in the case, the Court will calculate the limitations period using the second conviction.

-6-

Petitioner does not directly contest the calculations just set out.  However, he claims entitlement to equitable tolling from the time of his conviction until November 4, 2009.[3] The Supreme Court has determined that the one-year limitation period is subject to equitable tolling.  _Holland v. Florida_, 130 S.Ct. 2549, 2562 (2010).  Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  _Id._ (quoting _Pace v. DiGuglielmo_, 544 U.S. 408, 418 (2005)).  Unfamiliarity with the legal process and lack of representation do not constitute grounds for equitable tolling.  _United States v. Sosa_, 364 F.3d 507, 512 (4th Cir. 2004).  Likewise, "garden variety" negligence by counsel does not serve as a ground for equitable tolling.  _Holland_, 130 S.Ct. at 2564.

According to Petitioner, the following sequence of events ensued after his conviction in 2003.  First, Petitioner contacted North Carolina Prisoner Legal Services (NCPLS) for help with post-conviction relief.  That organization assigned Elizabeth Coleman Gray to his case.  (Docket Entry 13 ¶ 3.)  She then prepared to make a filing based on a decision of the North Carolina Court of Appeals that held that possession of small amounts of cocaine did not qualify as a felony in North Carolina.  However, in 2004, and before she made the filing, the North Carolina Supreme Court

---

[3] In actuality, Petitioner seeks both equitable tolling and tolling for the times that he had state post-conviction motions pending.  However, he would need equitable tolling for significant periods of time in order for any tolling based on the post-conviction motions to be relevant or for his Petition to be timely.  Therefore, the case turns on the equitable tolling argument.

overturned the ruling by the Court of Appeals on that point. (<u>Id.</u> ¶¶ 5, 6.) Gray then closed Petitioner's case without assisting him further. (<u>Id.</u> ¶ 6.)

At an unidentified later point in 2004, Petitioner's mother hired attorney James Williams to pursue post-conviction relief, but (according to Petitioner) Williams never made any filing and returned the money to his mother some time in 2005 after Petitioner filed a complaint against him. (<u>Id.</u> ¶¶ 7, 8.) His mother then hired Bruce T. Cunningham, Jr. to file post-conviction motions in the state courts and a habeas petition in this Court. (<u>Id.</u> ¶ 9.) Cunningham did file Petitioner's first motion for appropriate relief in the state court and sought certiorari after denial of said motion. He did not file further state court documents or a habeas petition in this Court. Petitioner claims that Cunningham instead told him that he would "petition Beverly Purdue to release a group of habitual felons if she became governor" and then "asked all incarcerated habitual felons to write N.C. senators about" a pending bill that could have released 7,000 nonviolent habitual felons. (<u>Id.</u> ¶¶ 10, 11.) The bill failed to pass "last year." (<u>Id.</u> ¶ 13.) Petitioner states that he began pro se litigation after the bill failed. (<u>Id.</u>)

Petitioner's equitable tolling argument depends on the actions, or the lack of actions, by attorneys who represented him during the post-conviction process. As noted above, "garden variety" negligence by an attorney will not qualify as "extraordinary circumstances" which will allow for equitable

tolling.  Holland, 130 S.Ct. at 2564; see also Rouse v. Lee, 339
F.3d 238, 256 n.20 (4th Cir. 2003); Smaldone v. Senkowski, 273 F.3d
133, 138 (2d Cir. 2001) (citing cases).  However, the Supreme Court
has held that "serious instances of attorney misconduct" could
potentially support an equitable tolling claim.  Holland, 130 S.Ct.
at 2563-65.  The attorney in Holland failed to file a timely
federal habeas petition, did not research the proper filing date,
did not notify his client that his state court filings had been
denied, and did not communicate with his client over a period of
years, all despite multiple letters from his client specifically
urging him to do all of these things.  Id. at 2564.

Here, Petitioner complains about the actions of three separate
attorneys.  However, only the actions of the first attorney, Gray,
require examination.  Gray's representation of Petitioner extended
from sometime following his conviction on March 24, 2003, until
sometime in 2004.

According to Petitioner, Gray reviewed his case, found a
potential issue that had merit, and prepared to raise that issue.
Petitioner also wanted Gray to pursue other issues, but she
apparently did not agree with him and chose to raise only the one
issue.  Petitioner describes that issue as relating to the case of
"Jones v. State" in which "the North Carolina Court of Appeals
reversed Jones['] habitual felon conviction" because it found that
"'100' dosages of cocaine or less was a misdemeanor."  (Docket
Entry 13, ¶ 5.)  Later, however, that case was reversed by the

North Carolina Supreme Court. (Id. ¶ 6.) Gray then declined to represent Petitioner further. (Id.)

Although Petitioner believes that Gray incorrectly refused to raise the issues he wanted her to pursue, she in no way tricked him, lied to him, or failed to communicate with him. Nor did she somehow wrongfully neglect his case. Petitioner makes no claim that Gray told him any post-conviction motion was filed when it was not or that she withheld any of his papers. The differences between Petitioner and Gray amounted to no more than a disagreement between an attorney and a client regarding the course that litigation should take. Petitioner alleges that Gray committed malpractice by failing to raise his issues, but such an allegation of "garden variety" negligence does not qualify as the type of "extraordinary circumstances" or attorney misconduct that potentially could warrant equitable tolling under Holland. Petitioner is not entitled to any tolling for the time that Gray worked on his case.

Based on that conclusion, Petitioner had no claim for equitable tolling during the period from April 7, 2003, until the date that Gray concluded her representation of Petitioner. Petitioner does not give the exact date that Gray's representation ended and it does not appear in the record. However, using the Jones case mentioned by Petitioner, i.e., State v. Jones, 161 N.C. App. 60, 588 S.E.2d 5 (2003), the approximate date becomes clear.

The North Carolina Supreme Court reversed the Court of Appeals' holding on June 25, 2004. State v. Jones, 358 N.C. 473,

-10-

487, 598 S.E.2d 125, 134 (2004) (concluding that possession of cocaine constitutes a felony in North Carolina and will support a habitual felon indictment). Therefore, Gray's representation of Petitioner must have lasted until sometime after that date, or more than fourteen months after Petitioner's time to file under 28 U.S.C. § 2244(d)(1) began to run on April 7, 2003. As a result, Petitioner's federal limitations period had already expired before Gray ended her representation of him and before he hired the later attorneys. Nothing that those attorneys did or failed to do could have affected Petitioner's time to file in this Court because that deadline had already passed.

Under these circumstances, the Petition is out of time and should be dismissed. This disposition renders moot all of Petitioner's other motions.[4]

**IT IS THEREFORE ORDERED** that Petitioner's motions for discovery and appointment of counsel (Docket Entry 9), for production of documents (Docket Entry 18), for an order compelling discovery (Docket Entry 20), for further discovery (Docket Entry 29), for withdrawal of a separate civil complaint regarding conditions of confinement (Docket Entry 30), for amendment of a separate civil complaint regarding conditions of confinement (Docket Entry 35), and for withdrawal of consent to the exercise of jurisdiction by a Magistrate Judge (Docket Entry 36) are **DENIED.**

---

[4] The Court addressed matters related to Petitioner's separate civil complaint in that case. See Nunn v. Keller, 1:10CV723 (M.D.N.C. Dec. 1, 2010, and Dec. 21, 2010) (unpublished).

**IT IS RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 5) be **GRANTED**, that Petitioner's motions for default judgment (Docket Entries 16 and 21), for issuance of a writ of habeas corpus (Docket Entry 27), and for equitable relief, including in the form of various requested transfers (Docket Entries 25, 28, 32 and 37) be **DENIED**, that the Habeas Petition (Docket Entry 2) be **DISMISSED**, and that Judgment be entered **DISMISSING** this action.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 13, 2011